UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LAS VEGAS DEVELOPMENT GROUP, LLC, <br><br>                Plaintiff,<br>vs.<br><br>2014-3 IH EQUITY OWNER, LP, *et al.*,<br><br>                Defendants. | Case No.: 2:15-cv-00917-GMN-NJK<br><br>**ORDER** |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 87), filed by Defendant Bank of America, N.A. ("BANA"). Defendants 2014-3 IH Borrower, LP, 2014-3 IH Equity Owner, LP, 2014-3 IH Property Holdco, LP, THR Nevada II, LP, THR Property Borrower, LP, THR Property Guarantor, LP, THR Property Holdco, LP, Counter Claimants 2014-3 IH Equity Owner, LP, 2014-3 IH Property Holdco, LP, THR Nevada II, LP, THR Property Borrower, LP, THR Property Guarantor, LP, THR Property Holdco, LP, Cross Claimants 2014-3 IH Equity Owner, LP, 2014-3 IH Property Holdco, LP, THR Nevada II, LP, THR Property Borrower, LP, THR Property Guarantor, LP, THR Property Holdco, LP (collectively, "Purchaser Defendants") filed a Response, (ECF No. 126), and BANA filed a Reply, (ECF No. 133).

For the reasons discussed below, the Court **GRANTS** BANA's Motion for Summary Judgment with respect to Purchaser Defendants' crossclaims.

**I.**    **BACKGROUND**

This case arises from the non-judicial foreclosure sale of real property located at 7832 Marksville Street, Las Vegas, Nevada 89149 (the "Property"). (*See* DOT, Ex. 1 to BANA's Mot. Summ. J. ("MSJ"), ECF No. 87-1). On December 4, 2006, Arnold and Jocelyn Dilag (collectively, "Borrowers") purchased the Property by way of a loan in the amount of

$280,000.00 secured by a deed of trust ("DOT") naming Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary, recorded on January 5, 2007. (*Id.*). BANA gained a beneficial interest in the DOT through an assignment recorded on April 27, 2012. (Assignment, Ex. 2 to BANA's MSJ, ECF No. 87-2).

Prior to the assignment, Cascade Homeowners Association, Inc. ("HOA") initiated non-judicial foreclosure proceedings on the Property under NRS Chapter 116. Upon Borrowers' failure to stay current on their payment obligations, Absolute Collection Services, LLC ("ACS"), on behalf of HOA, recorded a notice of delinquent assessment lien, a notice of default and election to sell, and a notice of sale on August 6, 2010, October 15, 2010, and January 21, 2011, respectively. (*See* Notice of Delinquent Assessment Lien, Ex. 7 to BANA's MSJ, ECF No. 87-7); (Notice of Default and Election to Sell, Ex. 8 to BANA's MSJ, ECF No. 87-8); (Notice of Sale, Ex. 9 to BANA's MSJ, ECF No. 87-9).

Before mailing the notices, ACS hired HOA Lawyers Group, LLC to perform a title search for the purpose of ascertaining whom to send notices. (*See* ACS Collection File, Ex. 5 to BANA's MSJ, ECF No. 87-5); (Depo. of Kelly Mitchell, Rule 30(b)(6) Rep. for ACS, Ex. 6 to BANA's MSJ 17:5–14, 21:14–24:10, ECF No. 87-6); (Depo. of David Alessi, Rule 30(b)(6) Rep. for Alessi & Koenig, LLC and HOA Lawyers Group, Ex. 10 to BANA's MSJ 23:3–25, 39:18–40:22, ECF No. 87-10). ACS did not send the notices to the record beneficiary of the DOT, MERS; instead, it noticed only the lender, Casa Blanca Mortgage, Inc. ("Casa Blanca"). (*Id.*). By that time, however, Casa Blanca had recorded its notice of dissolution with the California Secretary of State and no longer existed as a legal entity. (*See* Cal. Sec. State Business Search, Ex. 11 to BANA's MSJ, ECF No. 87-11) (showing dissolution on August 21, 2009). Unsurprisingly, the notices were returned as undeliverable. (*See* ACS Collection File). ACS proceeded with foreclosure anyway, and it sold Plaintiff Las Vegas Development Group,

LLC ("Plaintiff") the Property for $4,500 at public auction on June 7, 2011. (*See* Trustee's Deed Upon Sale, Ex. 12 to BANA's MSJ, ECF No. 87-12).

Following HOA's NRS Chapter 116 non-judicial foreclosure sale, Meridian Foreclosure Service ("Meridian"), the trustee of the DOT, commenced foreclosure proceedings on the DOT under NRS Chapter 107. (*See* Second Notice of Default, Ex. 16 to BANA's MSJ, ECF No. 87-16); (Second Notice of Trustee's Sale, Ex. 17 to BANA's MSJ, ECF No. 87-17). On December 3, 2012, Meridian sold the Property to Defendant THR Nevada II, LP for $136,600.00. (Second Trustee's Deed Upon Sale, Ex. 18 to BANA's MSJ, ECF No. 87-18).

Defendants each moved for summary judgment, arguing that HOA's sale of the Property was void and did not extinguish the DOT. (*See* MSJs, ECF Nos. 86–87). On March 25, 2020, this Court issued an Order denying Defendants' Motions because Defendants failed to meet their burden to demonstrate that the NRS Chapter 116 sale of the Property was either void or voidable against Plaintiff. (*See* Order, ECF No. 115). The Court deferred its ruling on BANA's Motion for Summary Judgment regarding Purchaser Defendants' crossclaims against BANA because Defendants had stipulated to stay briefing regarding the claims until after a decision resolving the Motions for Summary Judgment filed by Defendants against Plaintiff. (*Id.* 8:10–12); (Stip. Stay, ECF No. 110). The Court now addresses BANA's Motion for Summary Judgment on Purchaser Defendants' crossclaims.

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable

jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.  At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. DISCUSSION

Purchaser Defendants assert crossclaims against BANA for: (1) negligent misrepresentation, and (2) unjust enrichment. (Cross-Complaint ¶¶ 48–60, ECF No. 80). BANA argues that Purchaser Defendants' crossclaims are untimely because, at the latest, they began to accrue in February 2013—the time Purchaser Defendants received actual notice of the prior NRS Chapter 116 sale—but they failed to raise their claims until May 15, 2019. (BANA's MSJ 19:21–20:18, ECF No. 87).  Purchaser Defendants respond that their claims are timely because, as their damages are contingent on the Court ruling for Plaintiff in this action, the claims have not yet accrued. (Purchaser Defs.' MSJ Resp. 11:8–12:18, ECF No. 126). Alternatively, Purchaser Defendants argue that equitable tolling should apply to their claims. (*Id.* 14:16–16:6).[1]  The Court finds that Purchaser Defendants' claims are time barred.

---

[1] Purchaser Defendants also assert that their claims against BANA are not subject to any statute of limitations because they are permissive crossclaims. (*Id.* 12:19–14:15).  The status of a claim as procedurally permissive does not affect the underlying substantive statute of limitations provided under state law. *See, e.g.*, *The Bank of N.Y. Mellon v. Imagination N. Landscape Maint Ass'n*, No. 2:16-cv-00383-MMD-NJK, 2019 U.S. Dist. LEXIS 162832, at *15–*16 (D. Nev. Sept. 24, 2019).  Unlike in *Aramark*, BANA asserts claims for damages under state

### A. Timeliness

The Court first considers when Purchaser Defendants' crossclaims began to accrue. BANA argues that Purchaser Defendants' claims began to accrue either on the day they purchased the Property at the NRS Chapter 107 sale, December 3, 2012, because they had record notice of the competing interest, or when they learned about the Chapter 116 sale in February of 2013. (BANA's MSJ 19:21–20:18). Purchaser Defendants allege that their claims have not yet accrued because they are pleaded in the alternative to their claims against Plaintiff, and Purchaser Defendants will have only suffered damages if the Court vests title to the Property in favor of Plaintiff. (Purchaser Defs.' MSJ Resp. 11:8–12:18). The Court finds that the claims' accrual is not contingent on the disposition of this case, and the Court need not resolve whether actual notice or record notice commenced the running of the statute of limitations because Purchaser Defendants' crossclaims are untimely under either timeline.

This Court and courts in this District have routinely rejected Purchaser Defendants' proffered approach to the timeliness of alternative claims in similar HOA cases. *See, e.g.*, *U.S. Bank Trust, N.A. v. Fodor Family Trust*, No. 2:18-cv-00077-GMN-GWF, 2019 U.S. Dist. LEXIS 54958, 2019 WL 1446962, at *3–4 (D. Nev. Mar. 31, 2019); *Bank of New York Mellon v. Foothills at MacDonald Ranch Master Ass'n*, No. 2:17-cv-01195-APG-BNW, 2019 U.S. Dist. LEXIS 79958, 2019 WL 2089982, at *2 (D. Nev. May 10, 2019); *Bank of New York Mellon v. Spring Mountain Ranch Master Ass'n*, No. 2:17-cv-2177-JCM-NJK, 2018 U.S. Dist. LEXIS 117002, 2018 WL 3419251, at *4 (D. Nev. July 13, 2018) (reversed in part on other grounds); *Bank of Am., N.A. v. Country Garden Owners Ass'n*, No. 2:17-cv-01850-APG-CWH, 2018 U.S. Dist. LEXIS 42446, 2018 WL 1336721, at *3 (D. Nev. Mar. 14, 2018). In a typical HOA case, a DOT holder is adverse to the HOA and the buyer of the property at the foreclosure

---

law, not indemnity. *See Aramark Sports and Entm't Servs. vs. Twin Anchors Marine, Ltd.*, No. CV-14-08146, 2015 U.S. Dist. LEXIS 51555 (D. Ariz. Apr. 20, 2015).

sale. *See, e.g.*, *U.S. Bank Trust, N.A. v. Fodor Family Trust*, No. 2:18-cv-00077-GMN-GWF, 2019 U.S. Dist. LEXIS 54958, 2019 WL 1446962, at *1 (D. Nev. Mar. 31, 2019). In these cases, courts frequently have to determine when a DOT holder's claims against the HOA and buyer begin to accrue. *Id.* at *2–*3. For example, in *U.S. Bank Trust, N.A. v. Fodor Family Trust*, the plaintiff DOT holder argued that the statutes of limitation for its claims did not begin to run until the Nevada Supreme Court issued its ruling in *SFR Investments Pool 1, LLC v. U.S. Bank*, 334 P.3d 408 (Nev. 2014); before which, the DOT holder did not have notice that HOA's actions affected the DOT. *Id.* at *2. HOA argued that the relevant limitations periods began to run from the date of the NRS Chapter 116 sale because the sale gave rise to the DOT holder's claims. *Id.* This Court held that the limitations periods began to run from the date of the Chapter 116 sale because the Nevada Supreme Court "did not create facts supporting a cause of action; rather, [the court] 'did no more than interpret the will of the enacting legislature.'" *Id.* at *3 (quoting *K&P Homes v. Christiana Tr.*, 398 P.3d 292, 294 (Nev. 2017) (en banc)).

Here, the circumstances are the same. Purchaser Defendants had actual notice of the facts giving rise to their claims by February 2013. (Dep. Nicole Bowdle 47:20–50:12, Ex. 19 to BANA's MSJ, ECF No. 87-19) (explaining that THR II received a title report on the Property in February of 2013). As such, the statutes of limitation began to run, at the latest, on that date because Purchaser Defendants had notice of an adverse claim to their title. The status of their crossclaims as alternative claims, and the perceived likelihood of success on their claims because of the previous state of the law, are irrelevant. Whether the alternative claims become operative in this case is an issue of how the law applies, not whether the underlying facts support the alternative claims, and it is a legal fiction that the disposition of this case may create Purchaser Defendants' injury. Accordingly, the Court's below analysis proceeds as if the statutes of limitation began to accrue from the date Purchaser Defendants had actual notice of the NRS 116 sale.

### i. Negligent Misrepresentation

An action for negligent misrepresentation under NRS § 11.190 is subject to either a two or three-year statute of limitations. *See Lopez v. U.S. Bank Nat. Ass'n*, No. 2:13-cv-01232-MMD-PAL, 2014 U.S. Dist. LEXIS 10561, 2014 WL 300797, at *2 (D. Nev. Jan 27, 2014) (noting intentional misrepresentation and negligent misrepresentation claims are subject to a three-year statute of limitations and a two-year statute of limitations, respectively); *see also* NRS §§ 11.190(3)(d), (4)(e). Here, Purchaser Defendants' claim is explicitly for negligent misrepresentation, (*see* Cross-Complaint ¶¶ 56–60, ECF No. 80), and therefore, the two-year limitations period governs. Purchaser Defendants raised their crossclaim for negligent misrepresentation on May 15, 2019, despite the statute of limitations beginning to run by February 2013. (*See* Answer, ECF No. 80). Therefore, unless the statute of limitations has been equitably tolled, Purchaser Defendants' crossclaim is time barred.

### ii. Unjust Enrichment

Unjust enrichment claims are subject to a four-year limitations period under Nevada law. *In re Amerco Derivative Litig.*, 252 P.3d 681, 703 (Nev. 2011) ("The statute of limitation for an unjust enrichment claim is four years.") (citing NRS 11.190(2)(c)). Here Purchaser Defendants raised their crossclaim for unjust enrichment on May 15, 2019, despite the statute of limitations beginning to run by February 2013. (*See* Cross Complaint ¶¶ 48–55, ECF No. 80). Therefore, unless the statute of limitations has been equitably tolled, Purchaser Defendants' crossclaim is time barred.

### iii. Equitable Tolling

Purchaser Defendants argue that the Court should toll the statutes of limitation because Purchaser Defendants initially chose to file and join Motions to Dismiss instead of asserting crossclaims based on the then-existing state of the law. (Purchaser Defs.' MSJ Resp. 15:13–16:6). BANA replies that Purchaser Defendants slept on their rights by failing to either timely

file their claims against BANA or file a motion to toll the statute of limitations. (BANA's MSJ Reply 4:16–6:13).

"Equitable tolling operates to suspend the running of a statute of limitations when the only bar to a timely filed claim is a procedural technicality." *State Dep't of Taxation v. Masco Builder Cabinet Grp.*, 265 P.3d 666, 671 (Nev. 2011). Equitable tolling "is appropriate only when the danger of prejudice to the defendant is absent and the interests of justice so require." *Id.* (quotation omitted). Factors to consider when determining whether equitable tolling is appropriate include: "the claimant's diligence, the claimant's knowledge of the relevant facts, the claimant's reliance on authoritative statements made by the administrative agency, and whether these statements misled the claimant." *Id.* at 672.

Here, BANA would suffer prejudice if forced to defend from, and potentially satisfy a judgment, against Purchaser Defendants' untimely crossclaims. Purchaser Defendants lacked diligence in raising their claims given that they knew about the facts giving rise to their claims as early as February 2013 and the volatility of this area of the law. (*See* Dep. Nicole Bowdle 47:20–50:12, Ex. 19 to BANA's MSJ, ECF No. 87-19). Purchaser Defendants' brief provides no indication that BANA misrepresented the quality of title Purchaser Defendants acquired. Additionally, Purchaser Defendants fail to provide any authority indicating that a change in law justifies equitable tolling. Thus, the Court finds no reason to apply equitable tolling in this case. Purchaser Defendants' crossclaims against BANA are therefore time barred.

//
//
//
//
//
//

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that BANA's Motion for Summary Judgment, (ECF No. 87) is **GRANTED** with respect to Purchaser Defendants' crossclaims.

**IT IS FURTHER ORDERD** that the parties shall file a Proposed Joint Pretrial Order within thirty (30) days from entry of this Order.

**DATED** this __25__ day of November, 2020.

_____
Gloria M. Navarro, District Judge
United States District Court